**Thomas Royal JOHNSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3424.**

Supreme Court of Alaska.

July 7, 1978.

---

Stephen R. Cline, Asst. Public Defender, Ketchikan, Brian C. Shortell, Public Defender, Anchorage, for appellant.

James L. Hanley, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Chief Justice.

Appellant Thomas Royal Johnson was convicted by jury on January 24, 1977, of attempted robbery in violation of AS 11.15.-240 [1] and AS 11.05.020 [2] and of assault with a dangerous weapon in violation of AS 11.-15.220.[3] He was sentenced [4] to twelve years imprisonment with parole eligibility after one-third of this time.

Two issues are presented on appeal. The first is whether the out-of-court identifications of Johnson should have been suppressed. The second pertains to the length of sentence.

On June 18, 1976, Michael Wiley, the 14-year-old son of the owners of the Ben

1. AS 11.15.240 provides:
 *Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

2. AS 11.05.020 provides:
 *Punishment for attempt.* A person who attempts to commit a crime, and in the attempt does any act toward the commission of the crime, but fails, or is prevented or intercepted in the perpetration of the crime, when no other provision is made by law for the punishment of the attempt, upon conviction, is punishable as follows.
 (1) If the crime attempted is punishable by imprisonment in the penitentiary or state jail, the punishment for the attempt is by the same imprisonment, as the case may be, for a term not more than half the longest period prescribed as a punishment for the crime. If the period prescribed as a punishment for the crime is an indeterminate or life term, the

punishment for the attempt shall be fixed by the court at a term not more than 10 years.
 (2) If the crime attempted is punishable by a fine, the punishment for the attempt shall be by a fine of not more than half the amount of the largest fine prescribed as a punishment for the crime.

3. At the time of the offense, AS 11.15.220 provided:
 *Assault with a dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

4. Sentence was imposed only on the charge of assault with a dangerous weapon, the court considering a range of punishment between one and forty years.

Franklin Store in Juneau, had his attention attracted to an unusual customer while working as a clerk at the store. This customer was purchasing a full-face ski mask in the middle of the summer. Wiley talked with this person for approximately five minutes and remembered that the fellow argued with him about the price of the ski mask. During this discussion, Wiley was approximately three feet from the customer in a well-lighted store. One of the reasons that Wiley observed this customer carefully was that he thought he was going to steal the ski mask.

A few minutes after the sale of the ski mask, Wiley went across the street to the Harry Race Drug Store in order to meet Tim McCorkle with whom he regularly had lunch. Upon arriving at the drug store, McCorkle, son of the owner of Harry Race Drug, told Wiley about an attempted robbery that he had just witnessed. When McCorkle described the person that had attempted to rob the drug store as having long hair, a beard, and a tan army-type coat, Wiley realized that this was the same individual who had just purchased the ski mask in the Ben Franklin Store across the street. At approximately this time, Lt. James Hasty of the Juneau Police Department arrived at the drug store and talked with the witnesses.

One other police officer, Officer McCracken, had arrived at the store just prior to Lt. Hasty. After receiving a description of the man from John Raker, the pharmacist who was assaulted, McCracken left the store because he believed that on his way to the store he had seen the suspect. Lt. Hasty then asked Wiley to ride about the streets in his patrol vehicle in an effort to spot the suspect. During the approximately seven to eight minute ride in the patrol vehicle, Lt. Hasty received a radio transmission asking if the suspect wore blue bell-bottom pants to which Wiley replied in the affirmative. A short time later, a radio message was received from Officer McCracken saying that he had the person he believed to be the suspect in view

in the vicinity of the Juneau Motor Company. Lt. Hasty immediately went to that area, where Wiley positively identified the person as the one who had been in the Ben Franklin Store that morning purchasing the ski mask. Wiley was certain it was the same person since he still had the yellow, white and black ski mask sticking from his pocket. The person who Wiley identified was arrested and found to be Thomas Royal Johnson, the defendant.

Lt. Hasty then went to the Juneau Police Department where he photographed Johnson and prepared a photo lineup containing twenty-five photographs. All persons in the photo lineup had medium to long hair and facial hair (at least a moustache) and at least nine of the persons in the photo lineup had beards.

Within approximately one-half hour after he was assaulted, John Raker looked at the twenty-five photographs and, within 30 seconds, identified the defendant as the person who had assaulted him. Raker did not observe the defendant at the police station prior to identifying him in the photo lineup. Michael Wiley testified that Raker was present when he was examining the photographs but that Raker was writing his statement at the time and did not see the photographs that Wiley identified. Raker did not recall being present during Wiley's identification.

Another identification procedure occurred on January 4, 1977, when a lineup was arranged by defense counsel at the Juneau Police Department. At this lineup, Raker and Wiley positively identified Thomas Royal Johnson. In addition to these identification procedures, both Raker and Wiley identified the defendant in the courtroom at the time of trial.

Three separate identifications are complained of: (1) Wiley's initial identification of Johnson; (2) Wiley's identification of Johnson from a photo lineup within an hour of the arrest; and (3) Raker's identification of Johnson from the photo lineup.[5]

---

5. Johnson also challenges an identification by McCorkle from the photo lineup as a fruit of Wiley's initial identification. In light of our disposition of the other specified identifications, we need not address this contention.

Our review of the record convinces us that each of the three questioned identifications was valid and reliable. First, as to the initial identification of Johnson by Michael Wiley, we note that the police wished to identify their prime suspect quickly and had good reason to believe that the man Wiley had seen buying a ski mask was that person. While Wiley's identification of Johnson from a photo lineup may have been influenced by the fact that he had seen Johnson being placed under arrest less than an hour before, any possible taint is not sufficient to suppress the identification in light of the "totality of the circumstances."[6] Finally, the evidence supports the conclusion that Raker's identification of Johnson from the photo lineup was not contaminated by his presence in the room while Michael was making his identification.

Johnson's second argument on appeal is that the sentence is excessive and the superior court erred in not sending him to a drug rehabilitation program rather than to prison. We have recently rejected the notion that a drug addict must be placed in a drug rehabilitation program rather than be incarcerated. *Parks v. State*, 571 P.2d 1003, 1005 (Alaska 1977); *Fox v. State*, 569 P.2d 1335, 1337–38 (Alaska 1977).[7]

The principal duty of a sentencing judge is to determine for the case at hand the priority and interrelationships of the sentencing objectives. *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970). From our review of the record we conclude that the superior court was not clearly mistaken in its sentence.[8]

**6.** *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401, 411 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206 (1967); *Gould v. State*, 579 P.2d 535 (Alaska 1978); *Noble v. State*, 552 P.2d 142, 146 (Alaska 1976).

**7.** The court did recommend a drug treatment house "at an appropriate time" during the sentence.

**8.** *See Cleary v. State*, 548 P.2d 952, 954 (Alaska 1976). At the sentencing hearing, the court sentenced the defendant pursuant to the enhanced sentencing provision in AS 12.55.050, which allowed the defendant to be sentenced up to a maximum sentence of forty years on the assault with a dangerous weapon charge and thirty years on the attempted robbery charge because he had previous felony convictions. In addition to the defendant's prior felony convictions, the court had before it his long history of juvenile institutional placement, several psychiatric reports indicating that the defendant was basically an anti-social individual who had a record of assaultive anti-social acts during his institutional placements and the fact that the defendant had been released on parole from the Washington State penitentiary less than a week before committing the offenses in Juneau.

AS 12.55.050(2) states:

 If the person has previously been convicted of two felonies, then he is punishable by imprisonment for not less than the minimum nor more than twice the longest term prescribed herein for a second conviction of felony.