**Roger A. PADIE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3564.**

Supreme Court of Alaska.

April 27, 1979.

---

John Anthony Smith and Robert S. Spitzfaden of Smith & Taylor, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

Roger Padie appeals from his conviction of manslaughter which was entered following his plea of nolo contendere pursuant to a plea agreement negotiated with the state.

Padie's conviction arises out of an incident which occurred twelve years ago when Padie was eighteen years old. In the fall of

1966, Padie's girlfriend, Judy Braeger, transferred from East High School where both she and Padie were students to West High School. Shortly thereafter, Judy started dating Mike Christian and an intense rivalry developed between Christian and Roger Padie. One of Padie's friends loaned Padie a gun to carry in his car to protect himself after Padie became aware that Mike Christian was also armed. On the night the shooting occurred, Padie and Christian met while driving on Northern Lights Boulevard. Christian got into Padie's vehicle and they drove to the Sand Lake area. According to Padie, he shot Mike Christian after arguing with him about Judy when Christian allegedly attempted to choke him. After the shooting, Padie placed the victim's body in the trunk of his car and drove home. Padie and a friend named Melickian transferred the body to Melickian's car, and they drove to another friend's house who was also told about the shooting. The body was transferred once again to a third auto, and Padie and two of his friends finally drove to the Eagle River area and buried Mike Christian. The body has never been recovered. The next day Padie confessed to his father about the incident, and though his father encouraged him to turn himself in, he did not.

Since the shooting on November 3, 1966, Padie has had no further police record, with the exception of a few traffic offenses.[1] He did not successfully complete the twelfth grade at East High School, but he obtained a General Education Diploma at a later date. He was a truck driver for Smyth Van Lines until he was drafted in 1968. Padie served six months in Vietnam until he was injured in combat. He was awarded an air medal for meritorious achievement and the purple heart for wounds received in action, and he received the army commendation medal, first oak leaf cluster with victory device, for heroism in connection with military operations against a hostile force in Vietnam in 1969.

After his honorable discharge from the army in 1970, Padie was steadily employed until the last part of 1975 when he was arrested and charged with first degree murder in connection with Mike Christian's death.[2] He subsequently pled nolo contendere to the charge of manslaughter in accordance with a plea and sentence agreement negotiated with the state.[3] Padie agreed that Christian's death resulted from a shot from a gun held by him and that the killing was done "either in the heat of passion or [as] imperfect self-defense." He further agreed expressly to waive the statute of limitations so that he could plead nolo contendere to manslaughter, a time-barred offense. Open sentencing was contemplated under the agreement. Padie was subsequently sentenced to fifteen years imprisonment with eligibility for parole at the discretion of the parole board.

One of the specifications of error raised by Padie in this appeal is whether the superior court had jurisdiction to accept a plea of nolo contendere to the crime of manslaughter after the statute of limitations had run. While there is no statute of limitations in Alaska for the offense of murder, the crime of manslaughter is subject to a five-year statute of limitations.[4] The inci-

---

1. Padie has no verifiable record of juvenile adjudications. He has had two speeding citations, one in 1971 and one in 1975, one conviction for unsafe operation of a vehicle in 1972, and one conviction for driving on the wrong side of the road in 1974.

2. Padie was arrested following the disclosure by one of his friends who was told of the killing that Padie had been involved in the homicide of Mike Christian. The friend disclosed his knowledge after taking a polygraph test pursuant to an application for employment as a deputy sheriff in the State of Washington in 1973.

3. Though the state attorney general has instituted a policy which prohibits state prosecutors from engaging in sentence and most charge bargaining, *State v. Carlson*, 555 P.2d 269, 273 n.4 (Alaska 1976), the indictment in the case at bar was returned *before the adoption of the no plea bargaining rule*.

4. AS 12.10.010 provides:
   *General time limitation.* A prosecution for murder may be commenced at any time. Except as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not murder, unless the indict-

dent which gave rise to the May 9, 1975, indictment against Padie took place on the night of November 3, 1966. Since Padie was originally charged with first degree murder, the statute of limitations presented no bar to his prosecution. However, following a mistrial declared in September 1976,[5]

appellant pleaded nolo contendere to the offense of manslaughter pursuant to the negotiated plea agreement. As part of the plea agreement, Padie expressly waived his right to assert the statute of limitations for manslaughter as a defense to his conviction.[6]

ment is found or the information or complaint is instituted within five years next after such offense shall have been committed.

5. After the first mistrial, Padie brought a petition for review to this court in order to resolve the question of whether a defendant, who is charged with a non-time-barred offense, is entitled to a lesser included offense instruction for an offense which is time-barred. *Padie v. State*, 557 P.2d 1138 (Alaska 1976). Retrial was stayed pending decision by this court. Our opinion held that "[j]ust as a defendant may not be charged with a time-barred offense, he may not be convicted of it, even as a lesser offense included in one which is not time-barred." *Id.* at 1140. Padie was entitled to an instruction of the mitigating effect of passion and provocation, however, requiring the jury to acquit him if he presented such evidence in mitigation and the state did not negate it.

6. The court extensively questioned Padie regarding his understanding of the significance of his waiver of the statute of limitations defense before accepting his plea of nolo contendere to manslaughter:

THE COURT: You're charged with first degree murder in case number 75–2750. That *on or about the third day of November 1966* at or near Anchorage in the third judicial district, state of Alaska, that you being of sound memory and discretion did unlawfully, feloniously, purposely, and with deliberate and premeditated malice kill one Michael Christian, by shooting said Michael Christian. All of which is in violation of Alaska statute 11.15.010. That your attorney has stated that you want to enter a plea of nolo contendere to the crime of manslaughter which is a lesser included offense. That the crime of manslaughter has a 5 year statute of limitations from 1966—from November 3rd, 1966. Are you willing to give up your right to rely upon the statute of limitations as to the crime of manslaughter?

MR. PADIE: Yes.

THE COURT: At the trial on the indictment, if you were to go to trial on a first degree murder indictment which at this time would include the lesser included offense of second degree murder there would be an instruction pursuant to the direction of the supreme court on a writ of review which was taken which would inform the jury that if they had any reasonable doubt that you had acted upon a sudden quarrel or in the heat of pas-

sion then they must acquit you of first degree murder and second degree murder because they could not—and then I'm adding this, because they could not have found beyond a reasonable doubt that you had acted with malice which is an element of the offense of first and second degree murder. That is the instruction which I would propose to give or one similar to it because of the direction of the supreme court. And, of course, you're entitled to that because of the fact that unless you acted with malice you can't be guilty of either first or second degree murder. Do you have any questions about that instruction?

MR. PADIE: No, I don't.

THE COURT: Mr. Smith.

MR. SMITH: Yes.

THE COURT: Do you have any question about it?

MR. SMITH: No, I do not, Your Honor.

THE COURT: Do you believe that that accurately reflects the instruction which your client would be entitled to if he went to trial upon the indictment as it presently stands?

MR. SMITH: Without an opportunity to contemplate it for any length of time it appears to me to reflect the law as I recall the supreme court's opinion, Your Honor.

Later on Superior Court Judge Carlson stated:

THE COURT: You're giving up your right to rely on the statute of limitations as to prevent being convicted of manslaughter and this means that you are giving up the right to raise or in any way assert the defense of the 5 year statute of limitations now or at any time in the future. You are consenting to be charged with manslaughter and giving up any advantage which the language at page 3 of the decision [*Padie v. State*, 557 P.2d 1138 (Alaska 1976)] may give to you. And, Mr. Smith, to refresh our memories concerning page 3 of the decision, Justice Connor says, at the bottom of page 2, this conclusion follows from the principles that the statute of limitations is to be construed in favor of the defendant and that the statute of limitations is jurisdictional. Do you have any questions about the fact that by entering a plea of nolo contendere to manslaughter that your client is giving up his right to rely upon that language in Justice Connor's decision?

MR. SMITH: No, Your Honor.

THE COURT: Do you have any question about that, Mr. Padie?

On appeal, Padie claims that the superior court was without jurisdiction to convict or sentence him since the statute of limitations applicable to the crime of manslaughter had elapsed. *Padie v. State,* 557 P.2d 1138, 1140 (Alaska 1976), contains language to the effect that the statute of limitations for manslaughter is jurisdictional. On the other hand, we specifically noted that the "question . . . whether Padie could in these circumstances plead guilty to manslaughter" had not been considered.[7] Thus, the question we must now address is whether Padie could waive the statute of limitations after the time for prosecuting the crime of manslaughter had run.

■ Most courts have treated the waivability issue as dependent on whether the statute is treated as jurisdictional or as an affirmative defense.[8] In jurisdictions in which it is treated as an affirmative defense, the majority of courts hold the statute of limitations to be waivable.[9] It is generally recognized that the statute of limitations is " 'the primary guarantee against . . . overly stale criminal charges'." [10] A recent opinion of the Cali-

---

MR. PADIE: No.

After accepting Padie's plea of nolo contendere, Judge Carlson made the following statement for the record concerning the statute of limitations:

THE COURT: For the record, I would like to state that I have reviewed, concerning the statute of limitations, the opinion which is cited at 20 Criminal Law Week page 2391, U.S. versus Wilde (ph), Circuit Court of Appeals of the District of Columbia, dated January 21, 1977 and cases cited therein. That I am satisfied that even though I have not found a case where a defendant has sought to waive the statute of limitations after the statute of limitations has run, all of these cases that I have read appear to be based upon the factual circumstance that the defendant has waived the statute of limitations before it, in fact, has run either directly or by making efforts to have a verdict sealed or grand jury proceedings not to proceed. That even though there's no case directly on all fours with this case that the philosophy based upon what the statute of limitations is, it's a statutory right; it's not a constitutional right. Based upon the fact that a defendant can waive constitutional rights just as Mr. Padie has in this case that he can waive a statutory right that is the statute of limitations. It's my understanding that the attorneys do not contest this finding of the court. MR. SMITH: No, Your Honor.

7. *Padie v. State,* 557 P.2d 1138, 1142 n.7 (Alaska 1976).

8. *See generally* 8 Moore's Federal Practice ¶ 12.03[1] (2d ed. 1977); 1 Wright's Federal Practice & Procedure § 193, at 41–11 (1969 & Supp.1977).

9. A leading case which holds that the statute of limitations for criminal matters is an affirmative defense and is consequently waivable is *United States v. Wild,* 179 U.S.App.D.C. 232, 551 F.2d 418 (1977). *Wild* relied primarily on *United States v. Cook,* 84 U.S. (17 Wall.) 168, 21 L.Ed. 538 (1872), a Supreme Court case under the old common law rules of pleading which held that the statute of limitations could not be raised by demurrer, but instead had to be raised as a defense at trial. The *Wild* court interpreted this holding to mean that jurisdiction was not involved in a statute of limitations defense. This interpretation of *Cook* has been questioned by commentators who maintain that *Cook* only established a technical rule of pleading and did not address the jurisdictional question. Case Comment, *Waiver of the Statute of Limitations in Criminal Prosecutions: United States v. Wild,* 90 Harv.L.Rev. 1550, 1553 (1977); Note: *The Statute of Limitations in a Criminal Case: Can It Be Waived?,* 18 William and Mary L.Rev. 823, 829 (1977). However, a number of other courts have followed the affirmative defense rationale and have held that the statute of limitations must be asserted at or before trial. *Biddinger v. Comm'r of Police,* 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917); *State v. Kenner,* 354 F.2d 780 (2d Cir. 1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966); *United States v. Parrino,* 212 F.2d 919 (2d Cir. 1954), *cert. denied,* 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663; *United States v. Taylor,* 207 F.2d 437 (2d Cir. 1953); *United States v. Franklin,* 188 F.2d 182 (7th Cir. 1951); *Forthoffer v. Swope,* 103 F.2d 707 (9th Cir. 1939); *Pruett v. United States,* 3 F.2d 353 (9th Cir. 1925); *People v. Brady,* 257 App.Div. 1000, 13 N.Y.S.2d 789 (1939); *Commonwealth v. Ashe,* 154 Pa.Super. 397, 36 A.2d 249 (1944). *See also State v. Rosen,* 52 N.J.Super. 210, 145 A.2d 158 (1958); *Borough of Hillsdale v. Tandy & Allen, Inc.,* 29 N.J.Super. 61, 101 A.2d 617 (1953).

10. *Marks v. State,* 496 P.2d 66, 68 (Alaska 1972), *quoting United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627, 632 (1966). *See also Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156, 161 (1970). In a footnote to the *Marks* opinion, this court stated:

Such statutes represent legislative assessments of when a defendant's right to a fair

fornia Supreme Court concerning statutes of limitations suggested other policy considerations which underlie the concept of a period of limitations.

The possibility of self-reformation by the criminal offender may lessen the need for society to impose corrective sanctions and society's impulse for retribution may correspondingly diminish as time passes. Statutes of limitation also encourage the swift and effective enforcement of the law, hopefully producing a stronger deterrent effect. They tend to limit the chance that the first offense will spawn blackmail of the offender by others threatening disclosure—crime breeding more crime. Finally, adoption of a period of limitation represents a legislative recognition that for all but the most serious of offenses (such as murder or kidnaping) a never-ending threat of prosecution is

more detrimental to the functioning of a civilized society than it is beneficial.[11]

The finding that a statute of limitations is jurisdictional has generally been interpreted to mean that it can be raised at any time before or after judgment and that a plea of guilty or nolo contendere does not serve as a waiver of the statute by the defense.[12] Though the question of an express waiver of the statute of limitations has been infrequently addressed [13] where the statute is held to be jurisdictional, it has been ruled that jurisdiction cannot be conferred upon the court by consent of the parties.[14]

■ This mechanical extension of the jurisdictional approach to the waiver issue graphically illustrates its inflexibility in resolving statute of limitations problems.[15] The defendant, in a criminal case such as the present case, may have compelling reasons in his own best interest for deciding to waive the statute of limitations.[16] In our

---

trial should be presumed prejudiced because of dilatory accusation. They also provide a degree of predictability which cannot be duplicated in judicial decision.
*Marks v. State,* 496 P.2d 66, 68 n.4 (Alaska 1972).

**11.** *People v. Zamora,* 18 Cal.3d 538, 134 Cal. Rptr. 784, 790, 557 P.2d 75, 81 (1976) (citations omitted).

**12.** *In re Demillo,* 14 Cal.3d 598, 121 Cal.Rptr. 725, 535 P.2d 1181 (1975). In general, the lack of subject matter jurisdiction is not subject to waiver and may be raised at any time during the criminal proceeding. Alaska R.Crim.P. 12(b)(2). *See United States v. Heath,* 509 F.2d 16, 19 (9th Cir. 1974); *People v. Megladdery,* 40 Cal.App.2d 748, 106 P.2d 84 (1940); *State v. Lynch,* 82 N.M. 532, 484 P.2d 374 (1971).

**13.** The courts which have discussed express waivers of the statute of limitations have generally upheld them based on a determination that the statute does not constitute a limitation on the jurisdiction of the court. *United States v. Wild,* 179 U.S.App.D.C. 232, 551 F.2d 418 (1977) (defendant executed written waiver of the statute of limitations before it had run in order to continue plea negotiations with the state); *United States v. Doyle,* 348 F.2d 715, 719 (2d Cir. 1965), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 ("Even if [defendant's statute of limitations claims] are not waived by pleas of guilty *simpliciter,* a defendant advised by counsel can agree so to waive them . . ."). *Contra, Benes v. United States,* 276 F.2d 99, 109 (6th Cir. 1960) ("And the general rule is further that an indictment . . . barred by

the statute of limitations . . . is not waived by the fact that the prosecution was withheld on account of an agreement with the accused . . . .").

**14.** *See Maniatis v. Karakitsios,* 161 Colo. 378, 422 P.2d 52 (1967); *Brooke v. People,* 139 Colo. 388, 339 P.2d 993 (1959); *City of Cleveland v. Hirsch,* 26 Ohio App.2d 6, 268 N.E.2d 600 (1971); *Peeples v. Page,* 410 P.2d 888 (Okl. Crim.App.1966); *Ex parte Williams,* 341 P.2d 652 (Okl.Crim.App.1959), *cert. denied,* 361 U.S. 968, 80 S.Ct. 597, 4 L.Ed.2d 547; *Ex parte Merton,* 89 Okl.Cr. 76, 205 P.2d 340 (1949).

**15.** For instance, it is well settled in Alaska that a plea of nolo contendere ordinarily forecloses appellate review of any but jurisdictional defects in a conviction. *McKinnon v. State,* 526 P.2d 18, 24 (Alaska 1974); *Cooksey v. State,* 524 P.2d 1251, 1255 n.4 (Alaska 1974).

**16.** Before the statute of limitations has run, a defendant might make a calculated decision to waive the statute when it is about to run in order to gain time for plea bargaining. A defendant might also waived his limitations defense in order to vindicate his good name in the face of a serious and publicly known charge barred by statute. Someone facing trial on a charge with a long statute of limitations might wish to waive the shorter statute on a lesser included offense. Finally, a defendant might wish to plead guilty or nolo contendere to an offense after the statute of limitations has run in order to unburden his conscience or, as in the present case, to avoid going to trial on the

view, employment of a jurisdictional approach deprives the trial court of essential discretionary authority to determine whether or not the defendant should be able to waive the statute of limitations in the unique circumstances of the particular case.

In our view, the arbitrary jurisdictional-affirmative defense distinction should be abandoned in favor of a case-by-case analysis focusing on the language of the applicable statute of limitations and the public policies behind its enactment.[17] One commentator has suggested a salutary alternative which we think warrants adoption. Under this mode of analysis a statute of limitations can be waived if the trial court determines that the following prerequisites have been met:

(1) the waiver is knowing, intelligent, and voluntary; (2) it is made for the defendant's benefit and after consultation with counsel; and (3) the defendant's waiver does not handicap his defense or contravene any other public policy reasons motivating the enactment of the statutes.[18]

Application of the foregoing criteria to the case at bar has led us to the conclusion that Padie's waiver of the relevant statute of limitations should be affirmed. We think the record demonstrates that the waiver was knowingly, intelligently, and voluntarily entered; that it was made for

Padie's benefit and after consultation with counsel;[19] and that Padie's waiver did not contravene any of the policy reasons underlying criminal statutes of limitations.[20] We thus conclude that the superior court possessed jurisdiction to accept Padie's plea of nolo contendere to the charge of manslaughter after the statute of limitations had run.

Padie also specifies as error the superior court's alleged violation of Rule 11, Alaska Rules of Criminal Procedure, respecting plea and sentence agreements. More particularly, Padie argues that the superior court failed to inform him expressly that the court accepted the terms of the plea agreement, and further that the superior court ignored that portion of the plea agreement which provided that the plea and subsequent sentencing was to be based on the fact that the death was a result of acts committed in the heat of passion, or acts of imperfect self-defense.

Rule 11(e)(3) provides:

*Acceptance of Plea.* If the court accepts the plea agreement, the court shall inform the defendant that the judgment and sentence will embody either the disposition provided for in the plea agreement or another disposition more favorable to the defendant.[21]

Padie claims that while Judge Carlson accepted his plea of nolo contendere, a sepa-

---

greater charge which has no statute of limitations. *See* Case Comment, *Waiver of the Statute of Limitations in Criminal Prosecutions: United States v. Wild,* 90 Harv.L.Rev. 1550, 1554–55 (1977).

**17.** Case Comment, *Waiver of the Statute of Limitations in Criminal Prosecutions: United States v. Wild,* 90 Harv.L.Rev. 1550 (1977); Note: *The Statute of Limitations in a Criminal Case: Can It Be Waived?,* 18 William and Mary L.Rev. 823 (1977).

**18.** It is asserted that if these conditions are met, permitting a defendant to waive the benefit of the statute is neither unjust nor unreasonable. Note: *The Statute of Limitations in a Criminal Case: Can It Be Waived?,* 18 William and Mary L.Rev. 823, 840 (1977).

**19.** *See* note 6 *supra.*

**20.** One commentator has suggested that a court might wish to distinguish waivers made

after the statute of limitations has run on the ground that post-expiration waivers may significantly impair the state's interest in an efficient criminal system, since the very fact that the waiver is made after expiration suggests that the government was not prepared to prosecute before the statute ran. *See* Case Comment, *Waiver of the Statute of Limitations in Criminal Prosecutions: United States v. Wild,* 90 Harv.L.Rev. 1550, 1557 (1977). However this rationale seems to apply more to waivers for purposes of prosecution and trial rather than for the purpose of entering a nolo contendere plea where the defendant will not be handicapped by preparing a defense based on stale evidence.

**21.** Alaska R.Crim.P. 11(e)(4) reads:

*Rejection of Plea.* If the court rejects the plea agreement, the court shall inform the parties of this fact and advise the defendant personally in open court that the court is not bound by the plea agreement. The court

rate acceptance of the plea agreement was omitted and that he was not informed that the judgment and sentence would be at least as favorable to him as that contemplated in the plea agreement.[22] From examination of the record, it is apparent that the superior court, in accepting Padie's plea, did not expressly comply with the requirements of Criminal Rule 11(e)(3). Thus, this appeal presents the first occasion we have been called upon to establish the required degree of compliance with Criminal Rule 11(e). In *Lewis v. State,* 565 P.2d 846 (Alaska 1977), and *Joe v. State,* 565 P.2d 508 (Alaska 1977), this court adopted a "substantial compliance" standard for Criminal Rule 11(c) proceedings.[23] We believe the "substantial compliance" test is also appropriate in relation to Criminal Rule 11(e) proceedings for the following reasons.

The procedures described in Criminal Rule 11(e) are designed to prevent abuse of plea discussions and agreements by providing appropriate and adequate safeguards and are reflective of the recognition of the inequality in bargaining positions between the accused and the court which is not obligated to accept the agreement.[24] Given the preceding rationales for Criminal Rule 11(e), it seems that the test of "substantial compliance" adequately protects Padie's interest in securing adherence to the procedures of the rule.[25] Since the terms of any agreement must be disclosed on the record before the superior court may accept a nolo contendere plea[26] and failure to abide by a condition of the plea renders it invalid,[27] appellant is guaranteed the benefit of his bargain with the state as long as Criminal Rule 11(e) is substantially complied with.[28]

shall then afford the defendant the opportunity to withdraw his plea, and advise the defendant that if he persists in his plea of guilty or nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

22. In accepting the plea of nolo contendere to the crime of manslaughter, Judge Carlson stated:

THE COURT: Based upon your plea, entering a plea of nolo contendere to the lesser included offense, I accept the plea of nolo contendere to the lesser included offense of manslaughter . . . . Finding that you freely and voluntarily waived your right to a trial by jury or the court, that you've waived your right to cross examine witnesses, to call witnesses on your own behalf, to remain silent; that is not to say anything against yourself. You've waived your right to force the state to prove every element of the offense of first or second degree murder and manslaughter including that you were not suffering from a mental disease or defect so as to excuse you from responsibility and of self-defense. And that you've waived your right to appeal from any mistakes other than the right to appeal both as to sentencing and on the order forcing you to proceed and that you've given up your right to rely on the statute of limitations as I previously read. Do you have any questions which you want to direct to me, Mr. Padie?
MR. PADIE: No.
THE COURT: I accept your plea.

23. In *Lewis v. State,* 565 P.2d 846, 852 (Alaska 1977), we said:

[W]e have determined to treat violations of Criminal Rule 11(c) in the same manner as other errors not of constitutional dimension—reversible only if they affect substantial rights of the defendant. [footnote omitted]

24. Subdivision 11(e)(3) of Alaska R.Crim.P. was designed to inform the defendant immediately that the bargain would be honored.

25. *See State v. Morris,* 115 Ariz. 127, 564 P.2d 78 (1977) (reversal of criminal conviction not required because of mere failure to execute written plea bargain in accordance with the provisions of the applicable rule of criminal procedure); *People v. Young,* 72 Mich. 728, 250 N.W.2d 523 (1976) (failure to acknowledge plea agreement on the record was harmless where record revealed that both parties understood the provisions of the agreement and the agreement was fulfilled).

26. Alaska R.Crim.P. 11(e)(2).

27. *Cooksey v. State,* 524 P.2d 1251, 1256 (Alaska 1974). *See United States ex rel. Anolik v. Comm'r of Corrections,* 393 F.Supp. 48, 52 (S.D.N.Y.1975); *United States ex rel. Elksnis,* 256 F.Supp. 244, 249 (S.D.N.Y.1966); *State v. McClarity,* 27 Ariz.App. 571, 557 P.2d 170 (1976).

28. Based on the record in the present case, Padie makes a weak argument that he was

The foregoing leads us to a consideration of whether the superior court, in the instant case, complied with the rule. Padie argues that while acceptance of the plea without any acceptance or rejection of the plea agreement created an "implicit promise" on the part of the court to abide by the terms of the plea agreement, the superior court, in fact, rejected imperfect self defense and heat of passion as the agreed upon basis for the plea.[29] In support of his contention, appellant refers to the following remarks made by the superior court at sentencing. At one point, the trial court stated:

> The shooting didn't happen upon what is, in many instances, referred to in these cases as a sudden provocation; the cases cited to the court. There were elements of planning involved. The elements of planning were that Mr. Padie was carrying a concealable weapon within reach and there was a plan of confrontation.

A little later the superior court remarked:

> I certainly agree with Mr. Kay's argument that in the heat of passion, after all of the factors have been set in motion, there's no turning back but there is a turning back several steps prior to that. And that is not becoming in possession of a gun while having strong feelings of jealousy or envy, for example.

The state counters Padie's argument by pointing out that the "elements of planning" and lack of "sudden provocation" referred to by the court were in the context of discussing the fact that appellant had intentionally created a perilous situation which could and did lead to the death of another human being. The state asserts that the court's remarks nowhere suggest that the actual killing was not in the heat of passion or as a result of imperfect self-defense, or that the killing was either purposeful or malicious.

■ We find we are in agreement with the state's analysis of the questioned remarks and thus hold that the superior court substantially complied with the requirements of Rule 11(e). More specifically, we hold that the superior court did not reject the plea agreement and sentence appellant for a crime other than manslaughter.

For his third specification of error, Padie takes the position that the action of the State of Alaska, in transferring him to the Federal Correctional Facility at Springfield, Missouri, during the pendency of his appeal, deprived him of his sixth amendment right to counsel. Subsequent to imposition of sentence on July 21, 1977, Padie was transferred from the Eagle River Correctional Center to the Federal Prison at Springfield, Missouri, on September 26, 1977. At the time he was transferred, appellant had pending before the superior court motions to suspend execution of sentence and to withdraw his plea of nolo contendere. In addition, Padie had filed an application pursuant to Alaska Rule of Criminal Procedure 35(a) asking that sentence be reduced[30] and

---

unable to determine whether the superior court was accepting or rejecting the plea agreement. After the terms of the agreement were disclosed to the court, but before the court expressly accepted his plea of nolo contendere, Judge Carlson addressed Padie personally to determine the voluntariness of his plea. Among the questions asked were the following:

> THE COURT: Are you willing to give up your right to rely upon the statute of limitations as to the crime of manslaughter?
> MR. PADIE: Yes.
> THE COURT: Have there been any promises as to the sentence in this case which could be up to 20 years?
> MR. PADIE: No.

Having ascertained the appellant's agreement to the terms of the negotiated plea, the court subsequently accepted Padie's plea of nolo contendere to the crime of manslaughter. Appellant's brief concedes that under the circumstances, "[d]efendant could quite reasonably have assumed that the trial court judge, in accepting the nolo plea, also accepted the plea agreement." (footnote omitted)

29. Padie argues further that the superior court actually sentenced him for the crime of murder. The plea agreement contemplated that no effort would be made by either the state or the appellant to establish that Padie was either guilty of murder or innocent of manslaughter.

30. Appellant's motions to suspend execution of sentence and to withdraw his plea of nolo contendere were denied by the superior court on October 27, 1977. Although not indicated in the record before this court, Padie's Criminal Rule 35(a) application for reduction of sentence was also denied.

an appeal to this court had been initiated. Appellant's attorneys immediately filed a motion in superior court to require that Padie be returned to the Anchorage area, alleging that as a result of his transfer to Springfield, "the course of the proceedings will be slowed considerably since defendant's attorneys will constantly be needing additional time in order to make arrangements to consult with the defendant." In addition to the inconvenience to the court and his attorneys, the motion to return Padie to the Anchorage area asserted that the validity of the superior court rulings on the other pending motions might be jeopardized,[31] and that it was unjust to require appellant to begin serving his sentence in federal prison, since his classification for that purpose was based on the fifteen-year sentence which Padie has challenged on appeal. The motion to return appellant to the Anchorage area was denied.

Since all of the pending motions before the superior court at the time of his transfer to federal prison in Springfield, Missouri, were denied, appellant's claims that he would have been unable to participate in his own defense if they had been granted are no longer issues. What remains for us to consider is whether Padie was denied his right to counsel under the sixth and fourteenth amendments to the United States Constitution based on his inability to effectively consult with his attorneys while the motions were pending in superior court and his appellate brief was being prepared.

In the present case, Padie was not transferred from the Eagle River facility until almost two full months from the time his first Statement of Points on Appeal was filed.[32] Though appellant's brief was not filed until January 9, 1978, there was sufficient time in the period after the Notice of Appeal and Statement of Points on Appeal were filed, and before Padie was transferred out-of-state, for him to consult with his attorneys regarding facts and strategies to be pursued on appeal.[33] The only prejudice Padie alleges is that his counsel was forced to proceed in this appeal without knowing whether he would have preferred the remedy of withdrawing his plea of nolo contendere or that of specifically enforcing it if he prevailed on the merits of his claims. This allegation is not persuasive in the absence of any explanation by appellant's attorney as to why it was not possible to discuss these matters with appellant before his transfer or through the use of the mails during the four-month period after transfer and before appellant's brief was filed. We thus hold that Padie's sixth amendment right to counsel was not violated in the circumstances of the present case.[34]

**31.** The rationale for this assertion was that if the Criminal Rule 35(a) application was granted, a hearing would be required, and if the motion to withdraw his plea was granted, a new trial would be required. "In either case, the defendant must be in the Anchorage area so that he may appear at the hearing and/or the trial" and participate in his own defense.

**32.** *Cf. State v. Pfliegar*, 15 Or.App. 383, 515 P.2d 1348 (1973) (while nonaccessibility of counsel may constitute a denial of effective assistance of counsel in some circumstances, where defendant was free on bail after conviction in district court and pending trial *de novo* in superior court, and failed to contact his attorney, he was not denied his right to counsel merely because the attorney did not consult him but chose instead to rely on his preparation for the district court trial); *Leahy v. Estelle*, 371 F.Supp. 951 (N.D.Tex.1974) (fact that a state prisoner was transferred to the Texas Department of Corrections pending appeal and was forced to perform regular assigned work

tasks which deprived him of some time to work on his appeal and some access to legal materials and his attorney raised no cognizable federal constitutional issues).

**33.** The Statement of Points on Appeal was filed July 29, 1977. An Amended Statement of Points on Appeal which merely clarified an existing Point on Appeal was filed August 11, 1977. Padie was not transferred to the federal prison in Missouri until September 26, 1977.

**34.** We think it appropriate to caution Alaska's correction authorities to keep the convicted defendant in Alaska for a reasonable time, in order to consult with counsel regarding his or her appeal, prior to being transferred to a prison facility away from the place of trial. In E. Barkin, Impact of Recent Legislation and Rule Changes Upon Sentencing (paper delivered at the 2d Cir. Sentencing Institute, N.Y.C., N.Y., Nov. 11, 1966) 41 F.R.D. 467, 494, 496, the author concludes that a defendant must have a reasonable opportunity to confer with his attor-

We now turn to Padie's sentence appeal. Padie was sentenced to fifteen years imprisonment with eligibility for parole in the discretion of the parole board. In this appeal, he claims that this sentence was excessive based on the following related grounds:

(1) failure of the sentencing court to consider rehabilitation of appellant or any fact of mitigation;

(2) undue reliance by the sentencing court upon prejudicial assumptions;

(3) excessiveness of sentence in relation to the nature of this offense and sentences imposed for similar offenses.

■■■■ Turning initially to the last ground urged, we have stated that it is not the purpose of appellate review to enforce uniformity in sentencing.[35]

Sentencing is an individualized process, and all persons committing the same crime should not necessarily receive like sentences. Yet, theoretically, if two persons of identical background commit the same offense, they should receive like punishment. Sentencing, however, is not an exact science, and disparities will occur.[36]

However, this court will consider whether a disparity in sentencing is so irrational as to be "unjustifiable." *Burleson v. State,* 543 P.2d 1195, 1202 (Alaska 1975). Though the sentence in the present case is substantial, considering all the facts and circumstances surrounding the commission of the crime, we are not persuaded that it was excessive and clearly mistaken when compared to sentences for similar crimes which we have upheld in the past.[37]

■■■ Padie alleges that the sentencing court relied on certain prejudicial assumptions in imposing sentence. The first of these, that the superior court attributed appellant's actions leading up to the shooting with "elements of planning," and a lack of sudden provocation, has been discussed previously in this opinion. Padie argues further that though this is not a case where the sentencing court did not have psychiatric evidence available upon sentencing, the court failed to conscientiously consider the psychiatric evidence of the state and appel-

ney regarding his appeal before being transferred to a prison facility some distance away. Barkin notes further that a Policy Statement of the Federal Bureau of Prisons, 7300.15A, as amended Aug. 17, 1966, required at that time that a defendant be held in the district in which he was convicted for a period of not less than ten days, and if the appeal was filed within that time, the defendant be allowed to remain in that district for a period of thirty days thereafter. "If, however, circumstances are such as to warrant an increase or decrease in the period of local detention, such cases would be treated individually." 41 F.R.D. at 496.

**35.** *Burleson v. State,* 543 P.2d 1195, 1202 (Alaska 1975). *See Joe v. State,* 542 P.2d 159 (Alaska 1975).

**36.** *Burleson v. State,* 543 P.2d 1195, 1202 (Alaska 1975). *See Ames v. State,* 533 P.2d 246 (Alaska 1975); *Nicholas v. State,* 477 P.2d 447, 448–49 (Alaska 1970).

**37.** A summary of relevant cases decided by this court in the last five years follows:

(1) *Thessen v. State,* 508 P.2d 1192 (Alaska 1973), 20 years for 14 counts of manslaughter brought about by one act of arson affirmed.

(2) *Dulier v. State,* 511 P.2d 1058 (Alaska 1973), 20 years for manslaughter affirmed considering the brutal nature of the crime, the defendant's character and attitude, and the need for protection of society.

(3) *Hughes v. State,* 513 P.2d 1115 (Alaska 1973), 15 years for manslaughter in the beating death of the defendant's wife. In *Hughes* we stated:

It is apparent that the court gave careful consideration to many factors. While we do not necessarily agree with the primary emphasis placed on the element of 'reaffirmation of societal norms', we find that proper factors were considered. The judge had a reasoned basis for his decision and we conclude that the court was not clearly mistaken in the sentence imposed.

*Id.* at 1122.

(4) *State v. Abraham,* 566 P.2d 267 (Alaska 1977), sentence of five years with four suspended is too lenient for conviction for manslaughter in the beating death of the defendant's wife.

(5) *Halverson v. State,* 573 P.2d 1380 (Alaska 1978), 10 years imprisonment for manslaughter which occurred during a drinking bout on a dare affirmed.

(6) *Alpiak v. State,* 581 P.2d 664 (Alaska 1978), 10 year sentence for manslaughter affirmed where the defendant was heavily intoxicated, shot the victim with a shotgun and then abandoned him so that he drowned in a nearby tidal area.

lant's expert witnesses to the effect that incarceration would not be beneficial for Padie in terms of rehabilitation. It is apparent that the superior court did not adhere to the recommendations of the psychiatrists who testified at the sentencing proceedings. However, *State v. Chaney*, 477 P.2d 441 (Alaska 1970), established that the sentencing court must weigh psychiatric evaluations against the multifaceted objectives of penal administration in arriving at an appropriate sentence. In Padie's case, we are not convinced that the sentencing court improperly weighed and balanced the psychiatric testimony which was placed in the record.[38]

Padie's final point in connection with his sentence appeal is that the superior court failed to comply with the *Chaney*, criteria because it did not consider rehabilitation or any mitigating factors in imposing sentence. The superior court did mention rehabilitation briefly in its sentencing remarks. Although it did not explain its evaluation of this factor, the court apparently placed relatively minor emphasis on rehabilitation, secondary to its consideration of the need for protection of society.[39] It is clear that under *Chaney*, rehabilitation of the defendant must be considered in imposing sentence.[40] Nevertheless, the sentencing court retains broad discretion in sentencing. *Newson v. State*, 533 P.2d 904 (Alaska 1975). Part of that function is the determination of the priority and relationship of the *Chaney* sentencing criteria in each individual case.[41] In making this determination, the sentencing court in the present case emphasized the risk to society if appellant found himself in similar circumstances again today, the need to deter Padie, and the reaffirmation of societal norms. He also stated that he believed "sentencing today should certainly not be less than it would have been within a year of the killing," since Padie had been responsible for the delay because of his failure to come forward and accept responsibility for the crime. The court reasoned, therefore, that "Mr. Padie should not stand to reap any benefits from that delay." Though it is permissible for the sentencing court to consider societal protection to be of more importance than rehabilitation in a given case, the court in this case actually precluded consideration of any subsequent mitigating factors by its initial decision to impose a sentence no less than what Padie would have received twelve years ago. We have previously held that a sentencing judge may consider a defendant's failure to take responsibility for his criminal actions in assessing the need to impose substantial punishment.[42] However, "[t]he legitimate con-

**38.** As the state's brief points out, the sentencing judge may have been persuaded by other testimony of Dr. Wolf to the effect that Padie would require observation for "a long, long time," that he was "preoccupied with death and mutilation," and that he would probably become "immensely upset" if an emotional situation similar to that which occurred in 1966 was to happen again.

**39.** The sentencing judge stated:
> If this case had been resolved within one year of the killing, the court would have considered protection of society, what would be necessary to preclude Mr. Padie from killing again when his emotions were aroused whether of jealousy, envy, fear of a beating, or threats to his manhood as being a prime concern and secondarily, the rehabilitation of Mr. Padie which is inextricably tied to the protection of society.

**40.** *Mattern v. State*, 500 P.2d 228 (Alaska 1972). It has been held that the sentencing judge need only consider the *Chaney* criteria;

he need not recite them as long as it is clear from his remarks that he has considered those goals. *Evans v. State*, 574 P.2d 24, 26 (Alaska 1978).

**41.** *Johnson v. State*, 580 P.2d 700 (Alaska 1978); *Bordewick v. State*, 569 P.2d 184 (Alaska 1977); *Newsom v. State*, 533 P.2d 904 (Alaska 1975); *Asitonia v. State*, 508 P.2d 1023 (Alaska 1973); *Nicholas v. State*, 477 P.2d 447 (Alaska 1970). *See also Halverson v. State*, 573 P.2d 1380 (Alaska 1978).

**42.** The sentencing judge's observations that Padie had not accepted responsibility for the crime since he did not come forward on his own and admit to it should not be determinative in any event. Most defendants only admit responsibility for a crime after they are caught. Although Padie pleaded nolo contendere to the charge of manslaughter, he admitted responsibility for the death of Mike Christian when his plea was entered before Judge Carlson.

cern with expressing community condemnation of wrongful conduct should not have outweighed other sentencing factors so completely as to require the sentence which was here imposed."[43]  By sentencing Padie as though his conviction had been obtained within one year of the commission of the crime, the court substantially ignored Padie's subsequent history of steady employment, his meritorious service in the army, and his lack of involvement in any criminal activity other than a few traffic offenses in the twelve years since the commission of the crime.[44]  While concealment of a crime is a legitimate consideration in sentencing it should not preclude consideration of a defendant's rehabilitation subsequent to the time the crime was committed.

Thus, although we do not think the sentence is excessive, we conclude that the case should be remanded for the purpose of permitting the superior court to review the sentence it imposed, in light of all available information concerning Padie without excluding the time period commencing after 1967 until the present.

Padie's conviction of manslaughter is Affirmed, and the matter is Remanded for further sentencing proceedings in conformity with this opinion.

---

43. *Christian v. State*, 513 P.2d 664, 670–71 (Alaska 1973). In *Christian*, though the defendant had a good reputation in the community, had one prior conviction for reckless driving, and the conviction for making a fraudulent application for a motor vehicle title certificate was his first for that offense, the sentencing court had imposed the virtual maximum sentence for that crime.

44. *See* discussion *supra* at 2–4 and note 1 *supra*. *See also Mattern v. State*, 500 P.2d 228, 235 (Alaska 1972) (holding that a defendant who had committed his first offense (burglary), but had conducted a normal and respectable life up until the commission of the crime, was respected in the community, and apparently committed the crime not through ordinary criminal predilection but because of his psychological difficulties should not be sentenced to a term of imprisonment).