Edgardo SUMABAT, Appellant,

v.

STATE of Alaska, Appellee.

No. 3739.

Supreme Court of Alaska.

June 23, 1978.

---

Sue Ellen Tatter, Dana Fabe, Asst. Public Defenders, Steven Marks, legal intern, Brian Shortell, Public Defender, Anchorage, for appellant.

William L. Mackey, Dist. Atty., Kodiak, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

Appellant Edgardo Tabac Sumabat was convicted upon a jury verdict of the offense of manslaughter,[1] and was sentenced to twelve years imprisonment. He appeals on the ground that his sentence is excessive.

Sumabat, age twenty-six at the time of the events underlying this conviction, has no prior record. He was born in the Philippines, where his wife and two children remain.[2] His formal education terminated at the sixth grade.

Since his arrival in Alaska in 1975, Sumabat has been steadily employed. His supervisors have characterized him as "dependable and honest" and have indicated that he is eligible for rehire. Sumabat had sent regular monthly support payments to his wife and children in the Philippines until his arrest for the present offense.

The events precipitating Sumabat's arrest occurred on the evening of May 15, 1977, in Kodiak. Sumabat was awakened from sleep by one Joe Garlejo, who was holding a .45 caliber pistol. Garlejo had quarreled with Martin "Jun" Visperas; both men had been drinking. Sumabat took the weapon from Garlejo and exited his bedroom.[3] A scuffle ensued between Sumabat and Visperas, and the weapon discharged. Sumabat made the following statement:

1. AS 11.15.040 provides:

   *Manslaughter.* Except as provided in §§ 10–30 [first degree murder, obstructing or injuring railroad or aircraft and second degree murder] of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

   The verdict contained the handwritten notation "involuntary" preceding the word "manslaughter," although the form instructed the jury to choose between second degree murder and manslaughter. There is no crime of involuntary manslaughter in Alaska. *See Jennings v. State*, 404 P.2d 652, 655 (Alaska 1965).

2. The pre-sentence report states:

   It is the defendant's desire to eventually have his family join him in the United States, but he has been having a difficult time establishing his citizenship, as it is through his father, the defendant not having been born in this country.

3. Sumabat's statement said that he told his two friends: "You are acting like children. Both of you are drunk, why don't you stop this and settle it in the morning."

I pushed him (Jun Visperas) as hard as I can. As I pushed him hard a shot came, at the time I was aware the shot came from the gun I was holding. I had no intention of firing it because my intention was to take the gun away from the house so nothing would happen.

Visperas died a short time later. Sumabat went to the home of a friend, where he surrendered himself and the .45 caliber pistol, after the friend called the police. Sumabat was subsequently convicted of manslaughter. The jury's conclusion that the crime was "involuntary"[4] indicates its belief that although Sumabat was guilty of criminal negligence, he did not intend to kill Visperas. At sentencing, the trial court stressed the fact that Sumabat had not been drinking and characterized the incident as "a strange kind of an accident."

We believe that the trial court was clearly mistaken[5] in imposing a sentence of twelve years. The objectives of sentencing were enunciated in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), as follows:

. . . rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. (footnote omitted)

In our view, a sentence of ten years with five years suspended would appropriately meet these goals.[6] We do not mean to minimize the seriousness of an offense involving the loss of human life. We conclude, however, that Sumabat's responsible employment history, the nature of his offense, and the absence of a prior criminal record dictate a reduction in his sentence. We have previously approved the American Bar Association's recommendation that a maximum prison term ought not to exceed five years and only rarely ten except in cases involving "particular serious offenses" or an especially dangerous offender.[7]

Sumabat is not a "particularly dangerous offender."[8] Indeed, the trial court reached the same conclusion. Although the offense is serious, we believe that a sentence of ten years with five years suspended is adequate recognition of not only the gravity of the crime but also the continuing validity of the *Chaney* sentencing criteria.[9]

REMANDED.

---

4. *See* Note 1, *supra.*

5. *Cleary v. State*, 548 P.2d 952, 954 (Alaska 1976); *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).

6. This is more in accord with the recommendation of the probation-parole supervisor who drafted the presentence report. He recommended that the defendant be committed to the custody of the Commissioner of Health and Social Services for a period of five years.

7. ABA, Standards Relating to Sentencing Alternatives and Procedures, §§ 2.1, 2.5 (Approved draft 1968). Section 2.1(d) provides in part:
    Except for a very few particularly serious offenses, and except under the circumstances set forth in section 2.5(b) (special term for certain types of offenders), the maximum authorized prison term ought to be five years and only rarely ten.

8. *Cf., State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975) (factors to consider in characterizing a defendant as the "worst type of offender").

9. We have approved sentences of twelve or more years for manslaughter only where there is sufficient justification for such a severe penalty. *See Sandvik v. State*, 564 P.2d 20, 25–26 (Alaska 1977) (twenty years with eight years suspended; six prior OMVI's); *Hughes v. State*, 513 P.2d 1115, 1121–22 (Alaska 1973) (fifteen years; victim beaten to death in prolonged assault; six prior offenses, including two assault and batteries and one OMVI); *Dulier v. State*, 511 P.2d 1058, 1061 (Alaska 1973) (twenty years; brutal crime; defendant a "psychopath"). *See also, Halverson v. State*, 573 P.2d 1380, 1381 (Alaska 1978) (ten years; vic-

See *Black v. State*, 569 P.2d 804, 805 (Alaska 1977); *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974).

tim shot on dare during drinking bout); *Bishop v. State*, 573 P.2d 856, 857–58 (Alaska 1978) (two counts; two concurrent seven and one-half year sentences with two and one-half years suspended; two prior OMVI's); *Godwin v. State*, 554 P.2d 453, 454–55 (Alaska 1976) (ten years with five years suspended; defendant killed victim while operating a motor vehicle while intoxicated); *Layland v. State*, 549 P.2d 1182, 1183–84 (Alaska 1976) (eight years; defendant killed victim while operating a motor vehicle while intoxicated; one prior OMVI);

*Gregory v. State*, 492 P.2d 108, 109 (Alaska 1971) (seven years with three years suspended).