George Mark ROBERTSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4728.

Supreme Court of Alaska.

Feb. 21, 1980.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Eugene L. Murphy, Asst. Dist. Atty., Larry Weeks, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

George Robertson was working at an Anchorage bookstore when he heard a rumor that an Anchorage woman whose husband had been killed in a robbery had put out a contract for the death of the supposed killer. Seeing an opportunity to make some fast money, Robertson called the woman, told her he would do the job and arranged a meeting with her to discuss details. Following this conversation, however, the woman contacted the police and agreed to cooperate with them in apprehending Robertson. The police thereupon advised her to meet with Robertson and report back to them.

At the meeting, Robertson told the woman he wanted $5,000 down and $15,000 after the murder.[1] Acting on this information the police obtained search warrants to record the woman's return call to Robertson and a subsequent meeting arranged in the call. At the second meeting, observed by undercover officers and recorded by means of a device attached to the woman, the woman gave Robertson the $5,000 as agreed. Upon leaving the meeting Robertson was arrested.

Robertson was charged in a two count indictment with alternative crimes: soliciting a felony (that is, soliciting the woman to be an accomplice to murder), and obtaining money by false pretenses. The defense argued that these counts were mutually exclusive since only if Robertson did not intend to murder anyone would the false pretenses charge apply, and only if he intended to commit the murder would the solicitation count be proper. Defense coun-

---

1. According to the presentence report, the demand was for $15,000 down and $5,000 after the killing. In view of the actual down payment, $5,000.00, this recitation appears erroneous.

sel therefore moved to compel the prosecution to elect which crime it intended to prove at trial. Prior to the ruling on that motion, however, the defendant elected to plead guilty to the false pretenses charge on the understanding that the solicitation charge would be dismissed. The court imposed a sentence of three years imprisonment.

Robertson has consistently denied any plan to commit or arrange a murder and has admitted that his plan was to take the money and run. This was also the view taken by the sentencing judge.

## I.

Robertson is an unmarried man, 27 years old. His mother, a widow, and his eight siblings (seven of them younger) live in Missouri. Four of his brothers and sisters live with his mother in Bolivar, Missouri, where his father had been a farmer. The family appears to have been poor but cohesive, and well thought of locally.[2] Robertson is a butcher by trade. In Missouri he was employed steadily between 1970 and 1978, working primarily at local slaughterhouses as a buyer or butcher. His Missouri employers consider him re-employable.

Robertson came to Alaska in February, 1978, attracted by the economic opportunities, but was unable to obtain work in his field.[3] Through the Job Service he obtained work as a cashier at an allegedly pornographic bookstore in Anchorage, where he worked for the minimum wage and slept in a back room. It was through acquaintances

made there that he heard of the woman's alleged contract for murder.

Roberson has no prior juvenile, misdemeanor or felony record. He is a high school graduate and has never served in the military. There is no indication of drug or alcohol abuse. A psychiatric evaluation shows Robertson to be without neurosis or psychosis. Moreover, the examining psychiatrist observed that Robertson seems remorseful and accepts responsibility for his crime.

## II.

At the sentencing hearing the district attorney argued that the facts of the crime in themselves warranted at least a two-year term, primarily for the reaffirmation of societal norms condemning even the suggestion of murder for hire and condemning exploitation of a grieving widow. Defense counsel indicated her feeling that Robertson's crime was the result of an impulse acted on because of the unsavory crowd with whom he associated through his work, one which was out of character for Robertson, which would not have occurred but for the economic and peer group forces of the moment, and which would not be repeated.

Judge Carlson observed that the essence of law-abiding behavior consists in resisting the types of influences to which Robertson had been subjected. The sentence of three years was imposed "primarily to reaffirm society's view that swindling anybody is wrong, and especially swindling somebody in the way that you were attempting to do it."

2. Ronald Jagdfeld, a Bolivar man, wrote to the sentencing judge that local business people "contributed to a fund to offset expenses of the trip to send me to Alaska to appear and testify on his [Robertson's] behalf [at the sentencing hearing]. Funding was also gathered to pay for Mark's trip home with me . . . . [W]e have confirmed two jobs here for Mark. We are prepared to prepay his airfare to Missouri, and, if the court so requests, we are still prepared to stand the expense of sending someone to appear for Mark." Mr. Jagdfeld had intended to attend Robertson's sentencing, which was originally set before Judge Kalamarides. After the judge's death, Judge Carlson was assigned the case and the letter quoted above followed.

3. Initially Robertson worked for a Kenai fish-packer, a job which he had apparently arranged before coming to Alaska. That job was seasonal, however, and the company did not wish to rehire him when the season was over because he apparently questioned procedures. His employer commented:

> I like this young man personally but feel he does not work out in the plant operation. I honestly feel he should not be given heavy sentencing because he is goodhearted and tries to be what he should be. In determining what is fair—he tries to take the law into his own hands rather than do it conventionally.

### III.

Appellant reviews four factors entering into the sentencing decision and concludes the sentence was excessive. He relies on *Sumabat v. State*, 580 P.2d 323 (Alaska 1978), in which the same four factors led us to find a manslaughter sentence excessive. These factors are (1) the employment history, (2) the nature of the offense, (3) the prior criminal record, and (4) the probation officer's recommendation.[4]

In reply, the state acknowledges that Robertson's employment history and criminal record are favorable, but finds the probation officer's recommendation that Robertson be sentenced to time served[5] and placed on probation "inconsiderate of the facts of this case." The state finds that the most significant sentencing factor, of those mentioned, is the nature of the offense. Robertson's swindle which had overtones of murder for hire played upon a bereaved widow's grief. It was a particularly reprehensible swindle, the state argues, and the sentence, despite Robertson's favorable background, is therefore not clearly mistaken.

■■■■ Rehabilitation and isolation of the offender are of less significance in this case than in many. Nevertheless, deterrence of criminal conduct and reaffirmation of societal norms may of themselves be sufficient grounds for imposing an appropriate sentence. *See Smothers v. State*, 579 P.2d 1062, 1064 n. 7 (Alaska 1978); *cf. Sumabat v. State*, 580 P.2d 323, 325 (Alaska 1978). We share the trial court's distaste for the reprehensible nature of the swindle in this case. We agree that a substantial prison term is necessary in order to make manifest the community condemnation of Robertson's behavior and to deter even the appearance of the solicitation of murder by others in the future, not to mention the actual practice of revenge killings.

While some of us might have imposed a shorter term of imprisonment, or might have suspended a portion of the sentence, we are not convinced from a review of the record that the sentence was clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

AFFIRMED.

RABINOWITZ, C. J., dissents.

RABINOWITZ, Chief Justice, dissenting.

Although I agree with the majority that the "murder for hire" false pretense offense in this case is reprehensible, I find the three-year sentence is excessive. This type of deception, in light of the factual context of this case and the goals of community condemnation and deterrence, warrants a period of incarceration. However, Robertson is a youthful first offender who committed a nonviolent property crime. Robertson's background, character, and the unlikelihood that he will be a threat to the community in the future suggest that the sentencing goals directed toward deterring future crime will be adequately served by suspending eighteen months of Robertson's three-year term. In short, I think the reformative goal of sentencing can better be fulfilled by suspending the latter half of this sentence, placing Robertson on proba-

---

4. We caution that these factors are only four particulars of a multifaceted inquiry. We have consistently adhered to the position we enunciated in *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970), that under the legislation granting jurisdiction to hear sentence appeals "it is our duty to examine the proceedings below to review for excessiveness or leniency the sentence imposed by the trial court, in light of the nature of the crime, the defendant's character, and the need for protecting the public." *See e. g., Shagloak v. State*, 582 P.2d 1034, 1038 (Alaska 1978); *Andrews v. State*, 552 P.2d 150, 153 (Alaska 1976). Among the diverse considerations affecting this judgment are those sin-gled out in *Sumabat* and by the appellant in this case. But these are by no means the only relevant matters, nor are they necessarily of controlling significance in any individual case. We note also that in *Sumabat* the jury found that the defendant's crime was "involuntary", indicating its belief that Sumabat did not intend to kill. In contrast, Robertson's crime was a deliberate and intentional act calculated to play upon the grief of a widow.

5. Robertson was jailed on January 12, 1979, and was unable to post bail. He evidently has remained in jail since his criminal episode.

tion, and allowing him to return to a supportive environment, such as the one he has in Missouri, rather than giving him a three-year term.