**Myron John HUSTED, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5509.**

Court of Appeals of Alaska.

June 18, 1981.

David C. Backstrom, Deputy Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Steven J. Call, Asst. Dist. Atty., Fairbanks, and Harry L. Davis, Dist. Atty., Fairbanks, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

PER CURIAM.

· This is a sentence appeal from a fifteen-year sentence for manslaughter.[1] It is the second time this sentence has been before the appellate courts. *Husted v. State*, 608 P.2d 298 (Alaska 1980).

A brief review of the facts of the offense is required. Husted was convicted after a jury trial of involuntary manslaughter,[2] and acquitted of murder. His version of the events is that he had heard from several people that a contract had been let on him, because of a debt he owed. Concerned for his safety, he began carrying a gun. On April 16, 1978, Husted rode his motorcycle

---

1. Former AS 11.15.040 provided as follows:

   *Manslaughter.* Except as provided in §§ 10–30 [first degree murder, obstructing or injuring railroad or aircraft and second degree murder] of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

2. Alaska has no crime of involuntary manslaughter. However, courts in this state have frequently instructed the jury on voluntary and involuntary manslaughter. Given the wide range of conduct encompassed by manslaughter and the wide range of sentences permitted by former AS 11.15.040 (see note 1, *supra*), these verdicts can give the trial court guidance in sentencing a defendant convicted of manslaughter. We note that in *Sumabat v. State*, 580 P.2d 323, 325 (Alaska 1978), the supreme court attached considerable significance to the fact that the jury returned a verdict of involuntary manslaughter. *See Robertson v. State*, 606 P.2d 393, 395 n.4 (Alaska 1980).

to Edward Kubillus's home to try to borrow some money. Kubillus loaned him a wrench so that he could repair his motorcycle; when Husted stepped back into Kubillus's trailer to return the wrench, Kubillus fell on him. Kubillus was holding Husted's gun. The two men struggled and the gun discharged, killing Kubillus. The prosecution's theory, rejected by the jury, was that Husted killed Kubillus to execute a murder contract, or, alternatively, that the murder occurred in the course of a robbery.

Following the killing, Husted hid the body and took at least one valuable watch from Kubillus' trailer. He cut up the gun. He received $300 from a friend he told about the killing; the friend also forgave a $7,500 debt Husted owed to him. Husted was picked up by the police six days later in Haines, apparently en route to the lower forty-eight. He cooperated with the police after his apprehension.

Husted, thirty-three at the time of the offense, was born and raised in the small town of Wellsboro, Pennsylvania. He finished the tenth grade and joined the army; he received an honorable discharge in 1964 and returned to Alaska where he'd been stationed. He had a steady employment history, mostly as a teamster. His sole criminal record was two driving offenses.[3]

Before his sentencing in 1978, ten people, mostly from Wellsboro, wrote letters on Husted's behalf. The Wellsboro letters speak highly of Husted's family and report that Husted was a pleasant boy, an honest, industrious employee, with no reputation as a trouble-maker. At the resentencing, Husted presented letters from his prison security officer and his supervisor calling him an asset to the prison bakery where he worked. Another corrections officer wrote that Husted worked steadily, never caused any trouble, and recommended his release. Husted testified at the resentencing that he had not participated in a recent prison riot but had in fact helped to quash it, and had volunteered for extra clean-up duty afterward. Three officers confirmed this. A prison social worker wrote that Husted's adjustment was above average and that no major problems were foreseen upon his release into society. Five letters from Wellsboro reiterated the high esteem for the Husted family and spoke of Mrs. Husted's need to have her son home to assist with the work of running the family farm and small businesses. Mrs. Husted appeared personally at the resentencing.

Husted was originally sentenced to fifteen years imprisonment. The supreme court vacated that sentence because the trial judge's remarks failed to indicate that he had considered rehabilitation. *Husted v. State*, 608 P.2d 298 (Alaska 1980). In a footnote, the supreme court stated that it "express[ed] no judgment on the question of the excessiveness of the sentence." *Id.* at n.1.

At the resentencing, the judgment reimposed the fifteen-year sentence. He stated that he had considered rehabilitation at the first sentencing and that the testimony and documentation for the resentencing confirmed his initial judgment that Husted was a good candidate for rehabilitation. He said, however, that this was "the worst involuntary manslaughter case," or one of the worst, although he no longer found Husted to be a dangerous offender. The court concluded that in both the sentencing and resentencing he chose to place greater emphasis on "reaffirming society's norms and protection of the public rather than the rehabilitative potential of Mr. Husted."

On appeal, Husted argues simply that his sentence is excessive. The state argues that it is not, and that it was appropriate for the trial judge to give insignificant weight to appellant's rehabilitation compared to community condemnation for his act.

Among cases discussing the excessiveness of sentences, there are, of course, cases approving sentences of fifteen years or more for manslaughter, *e. g., Notaro v. State*, 608 P.2d 769 (Alaska 1980) (fifteen-year sentence upheld); *Padie v. State*, 594

---

**3.** The judge treated Husted as a first offender. Husted had a conviction for reckless driving in 1968 and a conviction for operating a motor vehicle under the influence of alcohol in 1976.

P.2d 50 (Alaska 1979) (fifteen-year sentence upheld but remanded because court did not consider Padie's actions in the twelve years between the crime and sentencing); *Hughes v. State*, 513 P.2d 1115 (Alaska 1973) (fifteen-year sentence upheld); *Dulier v. State*, 511 P.2d 1058 (Alaska 1973) (twenty-year sentence upheld), and there are cases finding sentences of less than fifteen years for manslaughter excessive, *e. g., Ripley v. State*, 590 P.2d 48 (Alaska 1979) (seven years with four suspended excessive, five years with four suspended appropriate); *Sumabat v. State*, 580 P.2d 323 (Alaska 1978) (twelve years excessive, ten years with five suspended appropriate).

Although comparison of sentences is never determinative, in this case comparison does suggest that Husted's sentence is severe. The cases cited above with a sentence of fifteen years or more can be distinguished from Husted's on important grounds.[4] There are no reported cases approving fifteen-year sentences for first-time offenders who were said not to require

rehabilitation or future deterrence. Many cases approve sentences substantially shorter than fifteen years for defendants accused of crimes as serious as Husted's; in some the need to rehabilitate the defendant as well as reaffirming societal norms support the prison sentence.[5] In *Sumabat* and *Ripley*, where community condemnation was recognized as the only factor supporting incarceration, the court held that five years and one year, respectively, were sufficient to express the community abhorrence for killing.

A number of factors persuade us that a sentence requiring fifteen years imprisonment is excessive. The jury found that this homicide was involuntary manslaughter.[6] We give great weight to the trial judge's finding, which is supported by the record, that Husted does not constitute a danger to the public and that a jail term is not necessary to accomplish his rehabilitation.[7] We also consider the fact that this is Husted's first felony conviction.[8] The supreme court has held that a sentence "ought not to

---

**4.** In *Hughes*, the defendant had several prior misdemeanors including two convictions for assault and battery, intimidating a witness, and breach of the peace, and beat his wife to death in a prolonged assault. The court in *Dulier* considered the brutal nature of the crime and psychiatric evidence which showed Dulier was a "psychopath" and was not amenable to treatment. In *Notaro* the defendant deliberately shot his wife. In *Padie*, the court apparently considered psychiatric testimony that Padie would become "immensely upset" if he were placed in an emotional situation again similar to the situation that led the manslaughter charge, and that Padie needed observation for a long time.

**5.** *See Phillips v. State*, 625 P.2d 816 (Alaska 1980) (ten-year sentence upheld for manslaughter which defendant committed while drunk and where defendant had been convicted of a prior homicide and had a history of serious alcohol problems); *Richards v. State*, 616 P.2d 870 (Alaska 1980) (ten-year sentence with three suspended upheld for manslaughter of infant son); *Jackson v. State*, 616 P.2d 23 (Alaska 1980) (ten year sentence for manslaughter approved, remanded on other grounds); *Nygren v. State*, 616 P.2d 20 (Alaska 1980) (eight years with five suspended upheld for manslaughter of husband); *Rodriguez v. State*, 613 P.2d 1255 (Alaska 1980) (twelve years with five suspended upheld for man-

slaughter killing of hitchhiker; judge emphasized defendant was dangerous unless treated); *Sumabat v. State*, 580 P.2d at 325 (victim killed when defendant attempted to wrest away a gun and stop a fight; defendant's "responsible employment history, the nature of his offense, and the absence of a prior criminal record dictate a reduction in his sentence" of twelve years to ten years with five suspended); and *Halverson v. State*, 573 P.2d 1380 (Alaska 1978) (ten-year sentence upheld for manslaughter where defendant while drunk shot a person; court emphasized deterrence of others and reaffirmation of societal norms).

**6.** *See* note 2 *supra*.

**7.** Alaska Const. Art. 1 § 12 specifies that "[p]enal administration shall be based upon the principle of reformation and upon the need for protecting the public." Given the trial court's express finding that Husted was not a danger to the public and did not require incarceration for rehabilitation, the only sentencing goals to be served by imprisonment would be deterrence of others and reaffirmation of societal norms. We do not believe that a sentence solely for these purposes should exceed ten years in this case. *Cf. Ripley v. State*, 590 P.2d 48 (Alaska 1979).

**8.** *See* note 3 *supra*.

exceed ten years except in unusual cases and normally should not exceed five years." ABA Standards, Sentencing Alternatives and Procedures § 2.1 at 1 (Approved Draft 1971); *Pascoe v. State*, 628 P.2d 547 (Alaska, 1980). We conclude that the sentence imposed is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

We therefore reverse and remand for the trial court to impose a sentence not in excess of fifteen years with five years suspended.