**Road YU, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–587.**

Court of Appeals of Alaska.

Sept. 27, 1985.

Thomas A. Flippen, II, Boyko, Davis & Dennis, Anchorage, for appellant.

William Ingaldson, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS, J., and DIMOND, Senior Justice.*

DIMOND, Senior Justice.

Road Yu shot and killed a woman named Un Kyong Kim. Upon a plea of guilty of the crime of second-degree murder, Yu was sentenced to imprisonment for a term of fifty years. He appeals this sentence on the ground that it is excessive.

Approximately one year before the killing, Yu, a married man, entered into a meretricious relationship with Kim, who was the owner and operator of a massage parlor in Anchorage—in reality, a house of prostitution. According to Yu's characterization of the relationship, they became like husband and wife. However, Yu and Kim

---

\* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

fought often and at times the police were called because of their disputes. On occasion, it was indicated that Yu physically abused Kim.

Because of his unfaithfulness, Yu's wife took their child and returned to Korea. Yu traveled to Korea and finally persuaded his wife to return to Alaska after promising that he would give up his relationship with Kim. After their return, Yu saw Kim once more. He stated that the purpose of the visit was to tell her that he wanted to terminate their relationship. When Yu arrived at the massage parlor an argument ensued. Yu left, consumed a considerable amount of alcohol, and then returned later in the day. Upon his return he found that Kim had just completed an act of sexual intercourse with another man. A fight developed between Yu and Kim.

Yu stated to the probation officer that Kim pointed a pistol at him—one that he had given to her for her protection. Yu said that he took the gun away from her and in an attempt to scare her, cocked the pistol. According to Yu, Kim grabbed for the gun and the gun discharged and Kim was shot in the face. Yu stated that he lost control after the first shot and continued to shoot Kim five more times. She died from these gunshot wounds immediately.

Yu was unable to explain the five additional shots other than he "lost control" following the first shot. He stated that he never intended to kill Kim and could not have predicted he would do so even a moment before he pulled the trigger. He stated: "The jealousy out of illicit love is what caused this murder play." Immediately following the killing, Yu had the police called. When they arrived he walked toward them with his arms held in front of him, with his wrists together in a gesture of submission simulating the placement of handcuffs.

■ The sentencing judge's remarks at the sentencing hearing were brief. He stated that the important *Chaney* criteria [1]

here were the reaffirmation of societal norms, the deterrence of others and the deterrence of the defendant. Yu contends that the judge relied exclusively on those three criteria and that he failed completely to consider the goal of rehabilitation.

It is difficult to tell whether or not the judge gave careful consideration to the important goal of rehabilitation. He stated that he knew of no program to treat jealousy, and that one can always get oneself into a situation where "jealousy rears its ugly head." If the judge's remarks are to be construed as his consideration of the criteria of reformation of a criminal defendant, then it appears that he thought Yu was not subject to being rehabilitated at all.

We believe this was a mistake. Jealousy does rear an "ugly head," as the judge stated, and it has ravaging effects, particularly when aggravated by alcohol, as we see from this case. But in considering the gamut of human emotions, jealousy cannot be singled out as an emotion for which there is no remedy. Once the aggravation of alcohol is removed, this emotional problem is subject to psychiatric or psychological evaluation and treatment, as is the case with other emotional disorders.

> We have held that:
> where a crime stems from psychological aberration, the potential for psychiatric rehabilitation is a paramount consideration in determining the weight to be given to the factor of rehabilitation and, consequently, the length of the appropriate sentence to be given.

*Smith v. State*, 691 P.2d 293, 295 (Alaska App.1984) (citation omitted). The passing remark by the sentencing judge that he knew of no program to treat jealousy fails to indicate that he gave appropriate consideration to the goal of rehabilitation. This is an important goal in this case because of the strong possibility that psychiatric or psychological treatment could be a factor that would be of considerable aid in helping Yu, upon release from imprisonment, to

---

**1.** *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (identifying objectives of sentencing).

live a decent life and contribute his innate worth to an ordered and peaceful society.[2]

We reach this conclusion from an independent review of the record.[3] Yu's prior record reveals no felonies, but only a series of violations of motor vehicle laws and regulations. The report of the probation/parole officer reveals that Yu was described by acquaintances as a shy and quiet man, one who had a great deal of internal emotion and frustration that he was unable to express, who tended to be impulsive and impatient and frequently did not consider consequences.

Yu was also described as a gentle individual who was very generous and always willing to help those in need. The probation report reveals that Yu served in the Marine Corps in Korea, attaining the rank of Lance Corporal, and that he received an honorable discharge after approximately two years. After he came to the United States from Korea his work history showed that he was an enterprising person and a hard worker.

There seems little question that Yu is probably an alcoholic. It was recommended that due to the nature of his offense, he be closely monitored for alcohol use whenever he is released from imprisonment. The recommendation went on to state that upon Yu's release his probation officer should be aware that any life crisis could increase his chance of relapsing into drinking, and that if the probation officer was aware of any added stress in his life, Yu should be closely monitored and referred for treatment. In her concluding remarks, the probation/parole officer had this to say:

> It is difficult to predict the likelihood of the defendant committing further violent acts if he received a period of release. Clearly Mr. Yu's alcohol abuse

and tendency toward impulsive behavior have proven to be a very dangerous combination. Should Mr. Yu receive a period of supervised release he needs to be prohibited from any use of alcohol or marijuana. It is further felt that Mr. Yu could benefit from counseling. Although he does have a language problem, it appears that it is not to the degree that it would seriously impede his progress in counseling.

> . . . .

> It is recommended that the defendant receive more than the minimum sentence as provided by law.

On this appeal, the state argues that the nature of Yu's act alone supports the sentence of fifty years' imprisonment, and in fact would support a maximum sentence of ninety-nine years.[4] But at the sentencing proceedings the prosecuting attorney stated, with commendable insight, thoughtfulness and candor, that considering all of the circumstances he believed a sentence of twenty to thirty years was appropriate. His reasons for this recommendation were that this would allow Yu to return to the community before he reached old age, and that if he obtained counseling and was kept away from alcohol and kept on probation for a sufficient length of time, he would still be able to spend some fruitful years as a normal person. The prosecuting attorney went on to say that a sentence in the range he suggested—not a light sentence by any means—would impress not only Yu but the community as well of the seriousness of the crime Yu committed. In short, the prosecuting attorney seems to have given appropriate consideration to the reaffirmation of societal norms, the deterrent effect such a sentence would have on not only Yu but also society as well, and the important factor of rehabilitation.

---

2. Rehabilitation is a factor that cannot be ignored. The Alaska Constitution, art. I, § 12, requires that "[p]enal administration shall be based on the principle of reformation and upon the need for protecting the public." The criteria in *Chaney*, 477 P.2d 441, *supra* note 1, are derived from this constitutional mandate.

3. *Faulkenberry v. State*, 649 P.2d 951, 955 (Alaska App.1982).

4. Alaska Statute 12.55.125(b) provides:
   A defendant convicted of murder in the second degree ... shall be sentenced to a definite term of imprisonment of at least five years but not more than 99 years.

We believe that the state's position taken at the sentencing proceedings would tend more to satisfy the *Chaney*[5] goals of imprisonment for a crime than the more stringent position the state has taken on this appeal. There is no fixed rule on what sentence to impose for second-degree murder. However, in *Page v. State*, 657 P.2d 850 (Alaska App.1983), we stated:

> Twenty years is therefore a proper benchmark to measure sentences for this crime. Any sentence substantially exceeding that amount would appear at least provisionally suspect. It would appear appropriate, therefore, in light of AS 12.55.125(b) and experience in sentencing second-degree murderers, both before and after enacting the revised code, that one convicted of that offense should receive a sentence of from twenty to thirty years. Naturally, mitigating circumstances could reduce the sentence down to the five-year minimum and aggravating circumstances could enhance it up to the ninety-nine year maximum.

657 P.2d at 855 (footnote omitted).

Yu could be characterized as an ordinary man who, in the heat of passion, caused by the destructive force of irrational jealousy aggravated by alcohol, took a human life. The enormity of the crime cannot be denied. However, the record fails to indicate that Yu was cold-blooded, a hardened criminal, remorseless, cruel or unfeeling, or a general danger to society. His principal problem was alcohol which aggravated what might be considered the emotional disorder of jealousy. Those things are subject to treatment, probably by appropriate counseling and psychotherapy.

In light of the entire record, we believe that the *Page*[6] benchmark of from twenty to thirty years for second-degree murder would be ample to satisfy the multiple goals of imprisonment called for in *Chaney*.[7] We find that the sentencing judge was clearly mistaken in imposing a sentence of fifty years imprisonment. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is VACATED and the case is REMANDED for imposition of a sentence of thirty years.

SINGLETON, J., not participating.

5. *State v. Chaney*, 477 P.2d 441, discussed *supra* note 1.

6. *Page v. State*, 657 P.2d 850.

7. *State v. Chaney*, 447 P.2d 441.