**STATE of Alaska, Appellant,**

v.

**Leslie T. KRIEGER, Appellee.**

**No. A–1566.**

Court of Appeals of Alaska.

Jan. 23, 1987.

Susan S. McLean, Dist. Atty., Kodiak, and Harold M. Brown, Atty. Gen., Juneau, for appellant.

Steve Cole, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Leslie Krieger was convicted of murder in the second degree, an unclassified felony, in violation of AS 11.41.110(a)(2). Initially, Judge James A. Hanson sentenced Krieger to fifteen years with five years suspended. Thereafter, Krieger successfully moved for a reduction of sentence, pursuant to Alaska R.Crim.P. 35(a), at which time Judge Hanson reduced the sentence to fifteen years with seven years suspended. The state appeals, alleging that the sentence, as modified, is too lenient. *See State v. Trunnel,* 549 P.2d 550, 551 (Alaska 1976) (state may appeal an order reducing a sentence pursuant to Alaska R.Crim.P. 35(a)). Having carefully reviewed the record in light of relevant authority, we agree with the state that the sentence is too lenient and expressly disapprove it.

## THE OFFENSE

On August 6, 1984, Leslie Krieger went to the home of Robert Bendixen where he discovered Bendixen engaged in sexual in-

tercourse with Krieger's wife; he shot Bendixen in the head, causing his death. It appears that Patricia Krieger and Bendixen had been drinking in downtown Kodiak earlier in the evening, and had gone to Bendixen's home in order to engage in consensual intercourse. It further appears that Krieger learned of his wife's intentions, and persuaded a friend, John Riley Morton, to drive him to Bendixen's residence. Krieger evidently took a short detour to his own residence to pick up a firearm.

Patricia Krieger initially denied any knowledge of the incident. Thereafter she wrote an extensive statement in which she contended Bendixen had taken advantage of her intoxication, tricked her into going to his residence where he physically detained her and sexually assaulted her. Leslie Krieger corroborated his wife's statement, in part, indicating that he shot Bendixen in order to protect his wife from a sexual assault. The trial judge rejected the Kriegers' statements, implicitly concluding that Pat Krieger and Bendixen were voluntary social companions and that Krieger did not believe his wife was in danger at the time he shot Bendixen.

## THE OFFENDER

Leslie Krieger was born on August 2, 1952, and was thirty-two years of age at the time of the incident. He has an unblemished record and, apparently, has never been involved in any violent behavior in the past. Krieger has been steadily employed throughout his adult life and has consistently contributed to the support of his wife and her children. His employers describe him as an excellent worker whom they would be happy to re-employ. In addition, Krieger has contributed to community activities and apparently has coached little league baseball and youth wrestling. Krieger was given a presentence psychiatric examination, which indicated that he suffered no mental illness or addiction to drugs or alcohol. Krieger received substantial community support at his sentencing.

## THE SENTENCE

Judge Hanson carefully considered the criteria established by the supreme court for criminal sentencing. See State v. Chaney, 477 P.2d 441, 444 (Alaska 1970) (rehabilitation, deterrence of others, deterrence of self, affirmation of community norms, and isolation). Judge Hanson concluded that Krieger was unlikely to offend again and was an excellent candidate for early parole. He therefore discounted both deterrence of the defendant and of others as sentencing criteria. He did not feel that Krieger's rehabilitation would be advanced by imprisonment. Consequently, he concluded that the primary sentencing factor was affirmation of community norms; general deterrence was considered to a lesser extent.

Judge Hanson stressed that Krieger went and obtained a gun with the intent to kill Bendixen and, possibly, his wife as well, and apparently changed his mind after killing Bendixen. He also stressed the fact that Krieger had not killed Bendixen as an instinctual act, but had taken time to obtain a weapon and travel to Bendixen's home. He, therefore, imposed a sentence of fifteen years with five years suspended. Shortly thereafter, Krieger moved for reduction of sentence pursuant to Alaska R.Crim.P. 35(a), and a hearing was held after Krieger had spent approximately ten months in prison.

At the hearing, correctional officers testified on Krieger's behalf, stressing that he had been a model prisoner, had participated in available rehabilitative programs within the institution, and had continued to utilize institutional resources to contribute substantial support to his wife and her children. After listening to testimony and hearing arguments of counsel, Judge Hanson reduced Krieger's sentence of incarceration by two years. He reiterated that Krieger was unlikely to commit future crimes and that, therefore, his deterrence and rehabilitation would not be served by further imprisonment.

In Judge Hanson's view, the purposes to be served by any additional time in prison

would be to affirm community norms and to deter others. He stressed again that this was not a situation in which Krieger had walked into his home, found his wife committing adultery, darted over to a desk drawer, grabbed a gun, and dispatched her lover. He rejected Krieger's contention that he had thought his wife was in some form of danger. Judge Hanson commented unfavorably on the fact that Krieger and his wife had gone dancing and drinking after the homicide. Nevertheless, Judge Hanson was very favorably impressed by Krieger's efforts in prison to continue supporting his wife and children. Judge Hanson was also impressed by Krieger's enthusiastic participation in counseling and other rehabilitative programs within the institution. He also rejected Krieger's request that the sentence of incarceration be reduced to the five-year minimum term, which in the judge's view, would be an insult to the *Chaney* criteria, but felt Krieger was entitled to a reward for his exemplary performance in prison.

The state appeals.

## DISCUSSION

██ A judge contemplating the imposition of sentence should generally consider the defendant's potential for rehabilitation, deterrence, (and, if necessary, isolation), the deterrence of others, and the affirmation of community norms. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). Where, however, a person intentionally shoots and kills another, the primary sentencing criteria are deterrence of others and affirmation of community norms. *See, e.g., Chaney*, 477 P.2d at 446–47; *Notaro v. State*, 608 P.2d 769, 770 (Alaska 1980); *Brown v. State*, 601 P.2d 221, 235 (Alaska 1979). The fact that the defendant has an exemplary record and does not need further state intervention for his rehabilitation is of less significance. *See Brown*, 601 P.2d at 235; *Bryant v. State*, 623 P.2d 310,

312 (Alaska 1981); *Wilson v. State*, 582 P.2d 154, 156 (Alaska 1978).[1]

In contrast, where a homicide is unintentional, Alaska's appellate courts indicate that the defendant's potential for rehabilitation is of significance and a sentence of ten years or less is sufficient to satisfy the *Chaney* criteria. *Pears v. State*, 698 P.2d 1198, 1205 n. 15 (Alaska 1985); *Sumabat v. State*, 580 P.2d 323, 325 (Alaska 1978); *Husted v. State*, 629 P.2d 985, 987 n. 7 (Alaska App.1981).

██ In summary, with intentional killings, the primary focus of attention is on the fact of the killing and the surrounding circumstances rather than on the defendant's past record and prospects for rehabilitation. An intentional killing may warrant a lesser sentence than a reckless or unintentional killing, but only where the offense itself is substantially mitigated. *See Walsh v. State*, 677 P.2d 912, 917 (Alaska App.1984). In the absence of such mitigation, a person convicted of second-degree murder should normally receive a sentence in the range of twenty to thirty years of incarceration. *Minchow v. State*, 670 P.2d 719 (Alaska App.1983); *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983).

In their presentation to Judge Hanson, the parties correctly recognized that the legislature has built in mitigating and aggravating factors in its definitions of homicide offenses to differentiate among first- and second-degree murder and manslaughter. *See Martin v. State*, 664 P.2d 612, 619–20 (Alaska App.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984). *See also Gregory v. State*, 689 P.2d 508 (Alaska App.1984) (strictly speaking, mitigating factors found in AS 12.55.-155 are inapplicable to second-degree murder. They are, however, significant by analogy in determining the relative seriousness of a given second-degree murder). They also recognized that a comparison of the facts of a given second-degree murder

---

1. Our decision in *Yu v. State*, 706 P.2d 348 (Alaska App.1985), does not conflict with *Brown* and its progeny. While we discuss rehabilitation in the context of an intentional killing (706

P.2d at 349–50), our holding simply brought Yu's sentence within a range of sentences previously approved for homicide motivated by jealousy. *See* n. 2 *infra* and accompanying text.

with those facts necessary for a finding of manslaughter or for first-degree murder is a reasonable way of determining the seriousness of the second-degree murder under consideration. *Compare,* AS 12.55.-155(c)(10) (most serious conduct) *with* AS 12.55.155(d)(9) (least serious conduct), *interpreted in Braaten v. State,* 705 P.2d 1311, 1325 (Alaska App.1985) (Singleton, J., concurring). Following this reasoning, a person who commits second-degree murder under circumstances approximating manslaughter may receive a mitigated sentence while a person who commits second-degree murder under circumstances approximating first-degree murder may receive an aggravated sentence. In other cases, the target sentences observed in *Page* would be appropriate.

■ In his presentation to the trial court, Krieger essentially argued that he killed Bendixen in a "heat of passion" so that his second-degree murder occupied the borderline between manslaughter and murder. In contrast, the state stressed the intentional killing and argued that the case was more akin to a first-degree murder. Given the substantial time elapsing between Krieger's suspecting that his wife was engaged in an adulterous relationship, his formulation of an intent to kill her lover (and perhaps her as well), and his detouring to pick up his gun, the trial court was not clearly mistaken in implicitly concluding that this case did not border on manslaughter. *See, e.g., Lalonde v. State,* 614 P.2d 808 (Alaska 1980); *Martin v. State,* 664 P.2d 612 (Alaska App.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984). While discovered adultery may be the kind of provocation that under certain circumstances could reduce murder to manslaughter, Krieger simply had too much opportunity to reflect to make his claim of ungovernable rage conclusive. Under the circumstances, we find his breaking into Bendixen's home particularly

troublesome. *See, e.g., Bryant v. State,* 623 P.2d 310, 312 (Alaska 1981).

Judge Hanson's rejection of Krieger's argument that he killed Bendixen in the heat of passion strongly militates against a sentence of fewer than ten years. Even if we were to view this case as somehow occupying the borderline between manslaughter and murder, it would still warrant an aggravated manslaughter sentence. *See, e.g., Lalonde,* 614 P.2d 808 (woman discovered boyfriend was interested in another woman and shot him; twenty-year sentence approved for second-degree murder); *Notaro v. State,* 608 P.2d 769 (Alaska 1980) (defendant with unblemished past history shot wife when he learned she was leaving him; held, intentional shooting made him among the worst manslaughter offenders; fifteen-year sentence affirmed); *Condon v. State,* 498 P.2d 276 (Alaska 1972) (defendant discovered wife and lover had committed adultery, got gun and executed lover; twenty-year sentence for second-degree murder approved); *Yu v. State,* 706 P.2d 348 (Alaska App.1985) (motivated by jealousy, Yu killed his lover, fifty-year sentence for second-degree murder reversed and case remanded for imposition of thirty-year sentence); *Maloney v. State,* 667 P.2d 1258, 1268 (Alaska App.1983) (defendant found girlfriend in bed with another man and beat her to death; twenty-year sentence with ten years suspended for manslaughter approved). *See also Martin,* 664 P.2d at 613–15 (defendant shot her lover apparently out of jealousy, trial court imposed minimum twenty-year sentence for first-degree murder).[2]

The circumstances surrounding Bendixen's death more closely approach murder rather than manslaughter. Thus the proper focus at sentencing would have been on deterrence of others and affirmation of community norms. *Brown,* 601 P.2d at 235. Consequently, a sentence more closely approximating the typical twenty- to thirty-year sentence for second-degree

---

**2.** Thus the courts of Alaska have established a sentencing range of ten to thirty years for intentional killings motivated by jealousy even though many of the affected defendants had otherwise unblemished records and were good prospects for rehabilitation. The relevant cases include both murder and manslaughter convictions.

murder would have been preferable. *Yu,* 706 P.2d at 351; *see also Komakhuk v. State,* 719 P.2d 1045, 1047–48 (Alaska App. 1986). A sentence of fewer than ten years' actual incarceration is clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence of the superior court is DISAPPROVED.