Javis ODOM, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2539.

Court of Appeals of Alaska.

Sept. 28, 1990.

Paul E. Malin, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., COATS, J., and REESE, Superior Court Judge.[*]

BRYNER, Chief Judge.

Javis Odom was charged with murder in the first degree. Following a jury trial he was acquitted of that charge but convicted of the lesser-included offense of murder in the second degree. AS 11.41.110(a)(1). Superior Court Judge Mark C. Rowland sentenced Odom to fifteen years in prison with three years suspended. Odom appeals, contending that the evidence was insufficient to support his conviction and that his sentence is excessive. We affirm.

On the morning of May 1, 1987, Robert Byrd and his fiancée, Linda Smith, were at the Anchorage home of Javis and Deborah Odom, where they had spent the previous evening. Byrd had passed the night drinking with Odom. Both men had also consumed some cocaine. Shortly after 8 a.m., Byrd began quarrelling with Smith. The quarrel escalated into a physical confrontation. Byrd slapped and punched Smith; he then struck her on the head with his fist at least once.

Smith was pregnant and yelled at Byrd to stop because he might hurt her baby. Byrd apparently stopped striking Smith but began to shake her. Odom heard Smith yell and entered the room where Byrd and Smith were fighting. After saying something like, "We don't do these things in this house," Odom shot Byrd in the back with a handgun. Byrd died of the gunshot wound.

At trial, Odom claimed self-defense, defense of others, and heat of passion. In returning a verdict of conviction on second-degree murder, the jury rejected these defenses, concluding that Odom had shot Byrd without justification and with knowledge that his conduct was substantially certain to cause death or serious physical injury. AS 11.41.110(a)(1).

On appeal, Odom argues that the superior court erred in denying his motion for a judgment of acquittal. He urges us to find that, given the strength of the testimony concerning his defenses, there was insufficient evidence to support his second-degree murder conviction.

In advancing this argument, however, Odom views the evidence in the light most favorable to his own theory of the case. Our decision cannot be based on this view. To determine the sufficiency of the evidence, this court must view the evidence in the light most favorable to the state; the evidence so viewed is sufficient when reasonable jurors could conclude that the de-

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

fendant's guilt has been established beyond a reasonable doubt. *See, e.g., Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).

■ Viewed in the light most favorable to the state, the evidence shows that Odom intentionally shot Byrd in the back with virtually no warning. Byrd was unarmed and had stopped striking Smith. Although he continued to shake and "manhandle" her, his conduct did not inflict or threaten to inflict serious injury to Smith, her unborn child, or to Odom. At the time of the shooting, Odom's judgment was substantially impaired from a night of drinking and from consumption of cocaine. It also appears that Odom had consumed some Valium.

So viewed, the evidence could well lead a reasonable juror to conclude beyond a reasonable doubt that Odom was not seriously provoked by Byrd and that he could not have reasonably believed it necessary to shoot Byrd either to protect himself or Smith and her unborn child. The superior court accordingly did not err in denying Odom's motion for a judgment of acquittal.

■ Odom also contends that his sentence is excessive. At the time of the offense Odom was thirty-six years old. He had a solid history of employment, enjoyed a stable family life, and was a minister in his church. Numerous family members, friends, and acquaintances wrote letters to the sentencing court attesting to Odom's good character.

On the other hand, however, it appears that Odom had a significant substance abuse problem that he refused to acknowledge. Even though Odom had ingested cocaine and Valium prior to the shooting, had spent the night drinking with Byrd, and had a blood alcohol level well above the established legal limit, in his trial testimony Odom acknowledged having only two drinks. Odom had previously been arrested for DWI. He had denied drinking on that occasion despite a blood alcohol level of twice the legal limit. In addition to his prior DWI conviction, Odom had a recent misdemeanor conviction for obtaining property by false pretenses. He was on infor-

mal probation for this offense when he shot Byrd.

Judge Rowland, in imposing sentence, gave full consideration to the favorable aspects of Odom's background. Judge Rowland also carefully weighed the mitigating circumstances surrounding the shooting, recognizing that, at the time, Odom probably genuinely believed his conduct was justified to protect Smith.

Nevertheless, Judge Rowland found it necessary to impose a sentence significantly greater than the statutory minimum five-year term. While finding that a lengthy term was not necessary for the purpose of rehabilitation and that there was no need to isolate Odom for a protracted period of time for the protection of the community, Judge Rowland concluded that a substantial sentence was necessary to express community condemnation and for the purpose of deterrence.

The judge made it clear that, in his view, Odom's background and the circumstances surrounding his current offense precluded the conclusion that Odom's conduct was among the least serious within the definition of the second-degree murder:

This is also, I believe, not the least serious offense within this class of offense. I draw such a conclusion from the following. First, the defendant's judgment was impaired by alcohol and cocaine. By virtue of his arrest and conviction for DWI he had previously been put on notice that he had a problem that needed to be addressed. Yet he chose to ignore the warning sign. This I view as substantially different from the case of a sober citizen who under circumstances similar to these makes a bad judgment call in defense of others. Secondly, he injected himself into the situation. Defense counsel has suggested the problem was thrust upon him. Although it occurred in his house I find he sought out his role, although in fairness, it would have been difficult to avoid. Thirdly, he armed himself in preparation for going to the place of the quarrel and he did so knowing that his judgment was impaired by drugs and alcohol. Fourthly, the defen-

dant ingested the alcohol by choice and the cocaine by choice. The circumstances in the present case are obviously substantially different than those which form the basis of the opinion in *Ripley v. State* which was cited to the court on the previous occasion.

Judge Rowland accordingly sentenced Odom to a term of fifteen years, with three years suspended.

Odom's argument that this sentence is excessive again proceeds from a view of the evidence most favorable to himself. Odom characterizes his conduct as a reckless murder, essentially similar to manslaughter, and insists that he should have received a sentence similar to the sentences received by typical offenders in mitigated cases of manslaughter or criminally negligent homicide. *See, e.g., Ripley v. State,* 590 P.2d 48 (Alaska 1979); *Sumabat v. State,* 580 P.2d 323 (Alaska 1978); *Husted v. State,* 629 P.2d 985 (Alaska App.1981).

Because Odom views his case as involving recklessness bordering on the lesser offense of manslaughter, he insists that he should at most have received a term of ten years to serve. Odom points out that ten years has been established as the upper limit for second-degree murder cases involving recklessness. He cites *State v. Krieger,* 731 P.2d 592, 595 (Alaska App. 1987), and *Pears v. State,* 698 P.2d 1198, 1203 (Alaska 1985).

Odom's characterization of his offense as involving only recklessness, however, is one that was rejected by both the jury and the sentencing court. In convicting him of second-degree murder rather than manslaughter, the jury refused to find that Odom acted recklessly; it concluded, instead, that he shot and killed Byrd knowingly and without justification.[1] Similarly, in imposing Odom's sentence, Judge Rowland—for reasons that are both sound and supported by the record—refused to find that Odom's conduct verged on the lesser offense of manslaughter.

Judge Rowland nevertheless recognized that Odom's offense was considerably less serious than a typical case of second-degree murder. The judge accordingly imposed a sentence substantially less severe than the twenty- to thirty-year sentence that this court has specified as a benchmark for typical cases of second-degree murder committed by first felony offenders. *See Page v. State,* 657 P.2d 850, 855 (Alaska App.1983).

We have independently reviewed the entire sentencing record and conclude that the sentence imposed below is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgment is AFFIRMED.

SINGLETON, J., not participating.

---

1. To convict Odom of murder in the first degree, the jury would have had to find that he acted with specific intent to kill Byrd. *See* AS 11.41.100(a)(1). The jury apparently rejected this theory. It concluded, instead, that Odom was guilty of second-degree murder under AS 11.41.110(a)(1), which defines second-degree murder to occur when death results from conduct that the defendant engages in "knowing that the conduct is substantially certain to cause death or serious physical injury to another person." Odom mistakenly views this definition as a form of murder involving recklessness. However, the provision plainly requires proof of knowing (but not intentional) conduct rather than mere recklessness. This is apparent under the Alaska Revised Criminal Code's definition of the culpable mental state "knowingly," as set forth in AS 11.81.900(a)(2):

> [A] person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist; a person who is unaware of conduct or a circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance....